# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
DAVID PHILLIP RODRIGUEZ,
Defendant and Appellant.

S251706

Fifth Appellate District
F073594

Kings County Superior Court
12CM7070

May 21, 2020

Justice Groban authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Cuéllar, and Kruger concurred.

PEOPLE v. RODRIGUEZ

S251706


Opinion of the Court by Groban, J.


This case presents the question of whether a prosecutor impermissibly vouched for witness credibility by asserting in closing argument that two testifying officers would not lie because each would not put his "entire career on the line" or "at risk" and would not subject himself to "possible prosecution for perjury." The Court of Appeal answered this question in the affirmative. The court further held that the error was prejudicial and therefore reversed the judgment of conviction. We affirm.

## I. BACKGROUND

On October 27, 2011, correctional officers Brian Stephens and Roger Lowder worked at the Substance Abuse Treatment Facility at Corcoran State Prison, where defendant David Rodriguez was an inmate.

Stephens testified to the following: At around 11:40 a.m. that day, he was in the prison patio area when he saw Rodriguez approximately 12 to 15 feet away inside a connecting hallway. Stephens had never seen Rodriguez before. Stephens observed Rodriguez with an untucked shirt covering his waist and handcuffs on his wrists. At a doorway to the hallway, Stephens met Rodriguez and told him to hold on. Stephens looked over his shoulder to see if another officer could assist him. He then saw a shiny object from his peripheral vision and felt a "[v]ery heavy and hard" blow on the back of his head. As far as he knew,

he was only struck once. A photograph of Stephens's head was taken on the day of the incident and was introduced at trial as a defense exhibit. Stephens testified that he sustained neck, shoulder, and head injuries, but that the head injury was under his hair and he could not see any injuries in the photograph. Stephens stated that at the time of trial he had been working for the Department of Corrections and Rehabilitation for approximately 17 and a half years.

Lowder testified to the following: On the day of the incident, at around 11:40 a.m., he heard someone yell "get down." From about 20 yards away, he then saw Rodriguez striking Stephens from behind. Rodriguez had handcuffs on his wrists, but the chain from a waist restraint system was wrapped around his hands and another four to six inches of chain was hanging from his left fist. Lowder said he saw Rodriguez twice raise his hands with chains in them and strike downward onto the back of Stephens's head, neck, and shoulders. Lowder testified that several correctional officers ran toward the altercation. One sprayed Rodriguez with pepper spray. Rodriguez swung the chain within about two feet of another officer's face, but did not hit him. The officers subdued him. Lowder stated that at the time of trial he had been working for the Department of Corrections and Rehabilitation for approximately 22 years nine months.

The jury saw a very low-quality video of the incident. Lowder testified that the resolution of the video was too low to see Rodriguez striking Stephens. Lowder and Stephens were the only witnesses to the incident who testified for the prosecution. A third officer testified that he arrived on the scene after Rodriguez was down. He said the chains from the restraint

system that normally go around an inmate's waist were instead under Rodriguez's body and were only attached at the wrist.

Rodriguez testified on his own behalf. He testified that on the day of the incident, correctional officers told him he had to go to class after he had been in his cell continuously for three or four weeks. Once in class, he got the teacher's permission to use the restroom. After using the restroom, he walked out to the prison patio area. Rodriguez said that he encountered Stephens and "got into a light argument" with him. Rodriguez walked past him. Stephens "tried to get out of my way, stumbled back and I just kept going forward." Rodriguez heard an alarm go off, then someone said "get down," and "some shots" were fired. Rodriguez "got pepper sprayed and went to the ground." He stated that he never struck Stephens with anything. According to Rodriguez, the waist restraints were around his waist at that time and therefore it was physically impossible to strike anyone with them. The parties stipulated that about two weeks before the incident, Rodriguez was notified that his father, grandmother, and uncle had all passed away within a short period of time.

During closing arguments, defense counsel argued that "the officers who testified aren't credible." Defense counsel went on to question the officers' version of events based upon the video. After defense counsel's arguments, the prosecutor then argued in closing:

"The jury instructions provided by the Judge list a number of factors for you to consider when you are evaluating the credibility of witnesses. I want to highlight one of those factors for you and that is motive to lie. Who in this trial, when they testified

before you, had a motive to lie, the officers or the defendant?

[¶] . . . [¶]

"What did Officer Stephens tell you?  He told you that he was attacked.  He was hit from behind.  Now, I ask you what motive would he have to lie?  Sort of anticipating a defense like this, when Officer Stephens was on the stand, I asked him, before that day, to your knowledge, had you ever seen the defendant before? No.  Did you know the defendant? No.  So, you are being asked to believe by the defense that Officer Stephens, an officer, I think, with 17 years of experience with the Department of Corrections, for some reason, would put his entire career on the line.  He would take the stand, subject himself to possible prosecution for perjury and lie and make up some story and tell you that this guy, who he didn't know, attacked him and hit him on the back of the head.  For what reason?  What possible motive would he have to do that?

"But you add to that the testimony of Officer Lowder. Officer Lowder testified this guy, the defendant, hit Officer Stephens.  So, now, we have two officers involved in this lie, apparently, according to the defendant.  Another officer with a long career.  His was over 20 years.  So, we're supposed to believe that, for some reason, Officer Lowder would put his entire career with the Department of Corrections at

> risk, subject himself to possible prosecution for perjury—"

At this point, defense counsel objected: "Assumes facts not in evidence." The trial court impliedly overruled the objection: "Excuse me. Go ahead. You may continue." The prosecutor finished the argument: "To perjure himself before you and, for some reason, lie and tell you that this defendant hit Officer Stephens on the back of the head. I submit to you what reason would he have to do that? There's no motive to lie that we know of."

The jury convicted Rodriguez as charged with two counts of assault by an inmate with a deadly weapon (Pen. Code, § 4501),[1] and one count each of battery by an inmate on a non-inmate (§ 4501.5), attempted battery by an inmate on a non-inmate (§§ 664/4501.5), and attempting to deter or prevent an executive officer from performing a duty (§ 69). Pursuant to an agreed disposition, Rodriguez admitted a prior strike (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and the prosecution moved to dismiss prior prison term allegations (§ 667.5, subd. (b)).

The trial court sentenced Rodriguez to 14 years eight months in prison, consisting of six years for assault by an inmate with a deadly weapon, doubled for the prior strike, plus a consecutive two years eight months for the other assault by an inmate with a deadly weapon conviction. The sentences on the remaining counts were stayed pursuant to section 654.

---

[1]     All further unspecified statutory references are to the Penal Code.

The Court of Appeal reversed. It found that the prosecutor committed reversible error with respect to all counts by improperly vouching for Lowder's and Stephens's credibility during closing. The court also concluded that the trial court committed reversible error with respect to the convictions for assault by an inmate with a deadly weapon by failing to instruct sua sponte on simple assault as a lesser included offense. The Attorney General petitioned for review solely on the question of whether the prosecutor's argument constituted impermissible vouching. We granted the petition.

## II. DISCUSSION

### A. *Vouching for the Witnesses' Credibility*

The Attorney General contends that the prosecutor's closing argument did not constitute improper vouching because it did not rely on facts outside the record or invoke the prestige of the prosecutor or his office.

" '[A] prosecutor is given wide latitude to vigorously argue his or her case' " (*People v. Dykes* (2009) 46 Cal.4th 731, 768 (*Dykes*)) and " 'may make "assurances regarding the apparent honesty or reliability of" a witness "based on the 'facts of [the] record and the inferences reasonably drawn therefrom.' " ' " (*People v. Redd* (2010) 48 Cal.4th 691, 740 (*Redd*).) "Improper vouching occurs when the prosecutor either (1) suggests that evidence not available to the jury supports the argument, or (2) invokes his or her personal prestige or depth of experience, or the prestige or reputation of the office, in support of the argument." (*People v. Anderson* (2018) 5 Cal.5th 372, 415 (*Anderson*).) Referring to facts not in evidence is "clearly" misconduct "because such statements 'tend[] to make the prosecutor his own witness—offering unsworn testimony not

subject to cross-examination. It has been recognized that such testimony, "although worthless as a matter of law, can be 'dynamite' to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence." [Citations.]' [Citations.] 'Statements of supposed facts not in evidence . . . are a highly prejudicial form of misconduct, and a frequent basis for reversal.' " (*People v. Hill* (1998) 17 Cal.4th 800, 828 (*Hill*), overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) We "view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203.)

Here, the prosecutor's argument generally asking, "what motive would [Stephens] have to lie?" (see *ante*, at p. 4), was proper because it did not "suggest the prosecutor had personal knowledge of facts outside the record showing [Stephens] was telling the truth" or "invite[] the jury to abdicate its responsibility to independently evaluate for itself whether [Stephens] should be believed." (*People v. Bonilla* (2007) 41 Cal.4th 313, 337–338.) The prosecutor's argument immediately after that concerning Stephens's testimony that he had not seen Rodriguez before the day of the incident was based upon the record and was proper. The prosecutor had asked Stephens on direct examination if he had ever seen Rodriguez before the day in question. Stephens responded, "Not prior to that day, no." The prosecutor was permitted to point this out.

Furthermore, the prosecutor's argument concerning the length of Stephens's and Lowder's careers was based upon the record and was proper as well. Lowder testified he had been working for the Department of Corrections and Rehabilitation for approximately 22 years nine months. Stephens testified that he had been working for the Department of Corrections for

approximately 17 and a half years. The prosecutor was fully permitted to argue that Stephens had "17 years of experience with the Department of Corrections" and that Lowder was "[a]nother officer with a long career. His was over 20 years."

However, the prosecutor's arguments that the officers would not lie because each would not put his "entire career on the line" or "at risk" constitute impermissible vouching. The prosecutor's career-related arguments "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." (*United States v. Young* (1985) 470 U.S. 1, 18.) The record here does not contain any direct or circumstantial evidence about whether the officers "would put" their "entire career on the line" or "at risk" by giving false testimony. The officers did testify that they had served for 17 and 20 years, but the length of an officer's career does not supply evidence that the officer would risk the most severe career penalty (being fired) for testifying falsely. The prosecutor's arguments on these topics are thus based upon matters outside the record that were not subject to cross-examination.

The Attorney General responds that the comments are proper as matters of common knowledge and inferences reasonably drawn therefrom. We disagree. Counsel may "draw from matters that are ' " ' "not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature." ' " ' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 289.) "[F]acts are deemed within the common knowledge of the jury only if they are matters of common human experience or well known laws of natural

science." (*People v. Love* (1961) 56 Cal.2d 720, 732, disapproved on another ground in *People v. Morse* (1964) 60 Cal.2d 631, 637, fn. 2; accord, *People v. Davis* (2013) 57 Cal.4th 353, 360; see, e.g., *People v. Perez* (1962) 58 Cal.2d 229, 242, disapproved on another ground in *People v. Poggi* (1988) 45 Cal.3d 306, 335.) Even if true, the fact that a law enforcement officer would risk termination for providing false testimony is not a matter of common knowledge. Instead, the validity of this assertion hinges on the inner workings of the relevant disciplinary procedures, including the disciplinary rules of the relevant law enforcement agency and the applicability of any collective bargaining agreement. This kind of determination lies beyond the ken of the average juror.

The Attorney General emphasizes that the prosecutor only stated that the officers put their careers "at risk" or "on the line," but did not "firmly" state the officers would lose their jobs, as the Court of Appeal indicated. (See *People v. Rodriguez* (2018) 26 Cal.App.5th 890, 907 (*Rodriguez*).) We agree with the Attorney General that the prosecutor did not "firmly" state that the officers would lose their jobs, as the Court of Appeal suggests. Nonetheless, the prosecutor did convey to the jury that the officers would risk losing their jobs by lying on the stand. There was no evidence in the record to support this contention. Furthermore, the prosecutor's statements conveyed that he knew information about the discipline of law enforcement officers that was not known to the lay juror. This was improper. (See *United States v. Weatherspoon* (9th Cir. 2005) 410 F.3d 1142, 1146 ["while no such firm assurance was provided . . . [,] no such modest shade of difference in the level of impropriety calls for a different result"].)

To be clear, our cases have traditionally looked to statements of personal beliefs in assessing whether a prosecutor has improperly invoked personal prestige or the reputation of the office. (See, e.g., *People v. Fuiava* (2012) 53 Cal.4th 662, 693–694 ["the prosecutor placed his own prestige and the prestige of his office behind the Vikings, and in so doing, improperly interjected into the trial his personal view of the credibility of the heart of the defense case"]; *People v. Loker* (2008) 44 Cal.4th 691, 739–740 [prosecutor improperly "injected his own experiences and beliefs into the argument"].) This is not a case where the statements at issue involved reliance on the personal beliefs or honor or integrity of the attorney making the statement. The main problem with the statements here is that they suggest "that evidence not available to the jury supports the argument." (*Anderson, supra*, 5 Cal.5th at p. 415.) But the statements pose similar concerns to vouching in its more traditional forms. When a prosecutor argues beyond the record about the career risks of untruthful testimony, the prosecutor invites the jury to fill in gaps in the evidentiary record by reference to the jury's own surmise based on the special reputation of law enforcement agencies and officers for veracity, as well as suppositions about the special insight prosecutors may have into law enforcement disciplinary procedures. The prosecutor thus "invite[s] the jury to rely on the prestige of the government and its agents rather than the jury's own evaluation of the evidence." (*U.S. v. Torres-Galindo* (1st Cir. 2000) 206 F.3d 136, 142.)

The prosecutor's comments regarding "possible prosecution for perjury" do not implicate quite the same concerns regarding improper vouching. With at least one version of the oath administered to witnesses stating that the

testimony is "under penalty of perjury" (Code Civ. Proc., § 2094, subd. (a)(2)), that someone may be subject to "possible prosecution for perjury" for knowingly providing false testimony at a trial may well be a more widely appreciated proposition than is the likelihood of termination from employment for such conduct.

In light of our conclusion that it was misconduct to speculate about the potential employment consequences of lying on the stand, we need not determine if the prosecutor's specific assertions regarding "possible" perjury prosecutions were acceptable. That a perjury prosecution for false testimony was "possible" may have been a fact within the common knowledge of jurors; however, as the Attorney General conceded at oral argument, a lay juror would naturally think that a prosecutor would know more about when someone can be prosecuted for perjury than a juror. For this reason, prosecutors are well advised to generally avoid raising the subject of future perjury prosecutions in their closing arguments.

Finally, though the argument in this case crossed the line into impermissible vouching, we do not mean to suggest that appropriate and zealous advocacy is somehow prohibited. When defense counsel argues that a witness has lied, the prosecutor is permitted to respond. The prosecutor " 'may make "assurances regarding the apparent honesty or reliability of" a witness "based on the 'facts of [the] record and the inferences reasonably drawn therefrom.' " ' " (*Redd, supra*, 48 Cal.4th at p. 740.) The error here is that the prosecutor's arguments were based on matters outside the record and that is not permitted.

B. *Cases Relied Upon by the Parties*

We have briefly addressed vouching claims based upon similar career-risk arguments before, with some divergence in our precedent. In *Dykes*, *supra*, 46 Cal.4th at page 774, the prosecutor argued: " 'If you believe [defendant], [an officer] is lying, risking his career and everything it stands for, to somehow frame this man.' " We concluded the claim was forfeited and, in any event, "the remark constituted fair comment on the evidence" that had been presented in that trial. (*Ibid.*) In another instance, we doubted "that the argument was proper" when a prosecutor argued that if a testifying officer had lied he would have " 'risked his whole career of 17 years.' " (*People v. Padilla* (1995) 11 Cal.4th 891, 946, overruled on another ground in *Hill*, *supra*, 17 Cal.4th at p. 823, fn. 1.)

The Attorney General argues that we approved a prosecutor's closing argument in "[p]erhaps the case most similar to the present one." In *People v. Anderson* (1990) 52 Cal.3d 453, in "briefly review[ing] the merits," we found that "remarks [were limited] to *facts of record*, namely, the years of experience of officers involved," and "inferences reasonably drawn therefrom," when the prosecutor doubted the officers would "jeopardize" their reputation by lying on the witness stand "just to convict one defendant." (*Id.* at pp. 478–479.) The Attorney General, however, attaches too much import to this discussion. Because the claim there was forfeited, our observations were not necessary to the claim's resolution. (See *People v. Mendoza* (2000) 23 Cal.4th 896, 915 [" '[W]e must view with caution seemingly categorical directives not essential to earlier decisions and be guided by this dictum only to the extent it remains analytically persuasive' "].) Moreover, the prosecutor in *Anderson* doubted the officers would " 'jeopardize' " their

reputation, but did not, as here, argue that officers would not put their "entire career on the line." The prosecutor's arguments in *Anderson* were therefore more directly tied to evidence in the record, namely the officer's years of experience, than the arguments here. Whether an officer would be fired for testifying falsely would not depend on the number of years the officer had been working, but, conversely, an officer's reputation could reasonably grow over time.

The Attorney General argues that we should follow *People v. Caldwell* (2013) 212 Cal.App.4th 1262. In *Caldwell*, in response to a defense argument that testifying officers had lied, the prosecutor argued that the officers would not commit perjury and " 'put their career on the line.' " (*Id.* at p. 1270.) *Caldwell* found that the prosecutor "was not vouching for [the officers'] credibility; he was rebutting the defense attorney's charge that the officers had lied about the photo lineup." (*Id.* at p. 1271.) The Court of Appeal in this case disagreed: "Defense counsel does not open the door for prosecutorial vouching every time he or she argues that a prosecution witness's testimony is untrue." (*Rodriguez, supra,* 26 Cal.App.5th at p. 910.) Impermissible vouching — where counsel relies on evidence not available to the juror or invokes his or her personal prestige or depth of experience — does not become permissible simply because the speaker claims to be responding to something opposing counsel said. (See *People v. Bain* (1971) 5 Cal.3d 839, 849 ["A prosecutor's misconduct cannot be justified on the ground that defense counsel 'started it' with similar improprieties"]; *People v. Taylor* (1961) 197 Cal.App.2d 372, 383 ["It is no answer to state that defense counsel also used questionable tactics during the trial and therefore the district attorney was entitled to retaliate"].) We accordingly agree with

the Court of Appeal and disapprove *People v. Caldwell, supra,* 212 Cal.App.4th 1262.

The argument here suffers from the same deficiencies, albeit to a lesser degree, as those addressed in *People v. Woods* (2006) 146 Cal.App.4th 106 (*Woods*). In *Woods*, the prosecutor argued that:

> " 'In a day of videotapes and people standing out with video cameras, do you honestly believe that out of 12 officers that went to that location that day they all sat down and got together and cooked up what they are going to say, that they all agreed as to what was going to go into the report, and they allowed that report to be filed with their names in it and their serial numbers in it? They are going to risk their careers and their livelihood for kilos of cocaine? For some heroin? Maybe for some stolen Maserati car parts? No. For five rocks of cocaine? That's what this comes down to, ladies and gentlemen. Mr. Woods and his cocaine that he tossed that day. 12 officers, 12 individual careers, pensions, house notes, car notes.' Defense counsel objected that there was no evidence to support the argument. The court overruled the objection.
>
> "[The prosecutor] continued her argument, stating, 'Bank accounts, children's tuition.' Defense counsel asserted a 'running objection,' which the court overruled.
>
> "After the ruling on the objection, [the prosecutor] resumed the argument, saying, 'Are these 12 officers

willing to risk those things for Mr. Woods and his five rocks of cocaine?'" (*Woods, supra,* 146 Cal.App.4th at p. 114.)

The Court of Appeal in *Woods* held that the argument strayed "into impermissible territory when [the prosecutor] implicitly suggested that all 12 unidentified, mostly nontestifying officers . . . had been involved in a case or cases involving higher stakes such as kilos of cocaine, heroin, and stolen Maserati parts, but had not risked their careers for the higher stakes case or cases; and the same 12 officers had mortgages, car loans, and children in private schools. Although the officers' financial obligations and experience were irrelevant to appellant's guilt, [the prosecutor] argued these factual matters outside of the record to attempt to establish the veracity of the few members of the group of 12 officers who testified." (*Woods, supra,* 146 Cal.App.4th at p. 115.) While the prosecutor's extrarecord arguments in *Woods* are more extensive than here, the overarching concern is the same in both cases. In *Woods,* the prosecutor argued beyond the record to bolster the credibility of the testifying officers by suggesting that they would not risk their careers and jeopardize their financial obligations. Here, the prosecutor also argued beyond the record to support the veracity of the testifying officers — specifically, that the officers would be putting their "entire career on the line."

The Attorney General also points to less analogous cases where we rejected claims of prosecutorial vouching. However, in each case, the prosecutor's statements were either more directly tied to the record than the arguments at issue here or were sufficiently general such that they would not convey to the

jury that the prosecutor had any special knowledge about the subject. (See *People v. Peoples* (2016) 62 Cal.4th 718, 796 [prosecutor argued that an expert was " 'so much more capable, with no agenda, and serving the bottom line to you' "; the comment was "reasonable commentary on the credibility of the witnesses"]; *Redd*, *supra*, 48 Cal.4th at p. 741 [prosecutor argued that a testifying officer "went the extra distance" and took his "job seriously"; the comments "were based upon facts established by the testimony"]; *People v. Boyette* (2002) 29 Cal.4th 381, 433 [prosecutor argued witnesses had no motive to lie; the comments were "simply argument based on inferences from the evidence presented"]; *People v. Medina* (1995) 11 Cal.4th 694, 757 [prosecutor argued that ballistics experts had no reason to lie, were not being paid for testifying, and told the truth to the jury; "the prosecutor properly relied on facts of record and the inferences reasonably drawn therefrom"]; *People v. Davenport* (1995) 11 Cal.4th 1171, 1217–1218 [prosecutor argued, " '[i]s that [expert], for 75 bucks going to come in here and, you know, make all of his findings up or try and sway them?' "; "the prosecutor reasonably inferred that [the expert] had received $75 for the . . . autopsy based on [testimony about payments]. Reference to this modest payment suggested that [the expert] had no motive to fabricate in making his report"].) The claims in *Redd*, *Medina*, and *Davenport* were forfeited on appeal as well. (See *Redd*, at p. 741; *Medina*, at p. 757; *Davenport*, at p. 1095.) These cases are therefore not dispositive of the issue before us now.

C. *Conclusion*

Based upon the foregoing and the record in this case, we find that the prosecutor impermissibly vouched for the testifying officers' credibility. The Court of Appeal found that the

prosecutor's vouching was prejudicial. That court appears to have overstated the import and effect of the prosecutor's remarks when it explained, "The impact of the prosecutor's remarks depended on the truth of a number of propositions, none of which come close to being self-evident: that law enforcement officers of long tenure are more likely to be honest than other people; that they can *firmly* expect to lose their jobs if they lie or exaggerate when testifying against those accused of crime; that they face a *grave* risk of prosecution for perjury by the very prosecutors who have presented their testimony if they do this; or that these factors are so powerful in the minds of officers that they would feel *no* motivation to lie in order to maximize the punishment of those who attack them." (*Rodriguez, supra*, 26 Cal.App.5th at p. 907, italics added.) We doubt that a reasonable juror would have drawn these precise conclusions from the prosecutor's remarks and therefore disapprove *People v. Rodriguez, supra*, 26 Cal.App.5th 890. Nevertheless, the Attorney General has not argued harmlessness here, and we express no view on the Court of Appeal's conclusions that the statements were prejudicial. We do observe, however, that courts have often found that brief statements such as those before us have limited prejudicial effect. (See, e.g., *State v. Whitfield* (R.I. 2014) 93 A.3d 1011, 1020, fn. 6.) We therefore affirm the Court of Appeal's reversal of the judgment.[2]

---

[2] The Attorney General also does not contest the Court of Appeal's reversal of Rodriguez's convictions for assault with a deadly weapon on instructional error grounds.

### III. DISPOSITION

We affirm the Court of Appeal's judgment.


**GROBAN, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Rodriguez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 26 Cal.App.5th 890
**Rehearing Granted**

_____

**Opinion No.** S251706
**Date Filed:** May 21, 2020

_____

**Court:** Superior
**County:** Kings
**Judge:** James LaPorte

_____

**Counsel:**

Lauren E. Dodge, under appointment by the Supreme Court, for Defendant and Appellant.

Ricardo D. Garcia, Public Defender, and Albert J. Menaster, Deputy Public Defender, for the Los Angeles County Public Defender's Office as Amicus Curiae on behalf of Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez, Nora S. Weyl, Louis M. Vasquez, Rachelle A. Newcomb, Janet E. Neeley and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Lauren Dodge
1250 Newell Avenue, #220
Walnut Creek, CA 94596
(925) 948-1090

Lewis A. Martinez
Deputy Attorney General
2550 Mariposa Mall, Room 5090
Fresno, CA 93721
(559) 705-2308