Filed 10/20/21  P. v. LaGrone CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MARK STEVEN LAGRONE, JR.,<br><br>　　　Defendant and Appellant. | A160959<br><br><br><br>(Alameda County<br>Super. Ct. No. 18-CR-008938) |

Mark Steven LaGrone, Jr. appeals from convictions on two counts of assault with a deadly weapon after he stabbed two unarmed individuals during a fight.  He contends that his convictions must be reversed due to errors relating to the jury instructions, the trial court's response to jury questions, and prosecutorial misconduct, as well as cumulative prejudice from these errors.  We conclude that his contentions lack merit.  However, LaGrone correctly asserts that his sentence must be reduced by two years – a point the People concede – and we modify the judgment accordingly.

1

## BACKGROUND

### A.

The trouble started when two teenagers, S. and T., got into a fight at school.[1] S.'s mother, Shay, was like a sister to LaGrone. LaGrone met Shay and S. at a park after he learned that S. had been in a fight and Shay was upset. Shay had a plan to go to T.'s home. On the way to T.'s, LaGrone observed S. remove her sweatshirt, which he took to mean she was prepared to fight.

S., Shay, and LaGrone arrived at T.'s family's apartment in a group of six to eight people, one of whom was a 16-year-old named Freddy. S. banged on the door to the apartment and slammed the security gate; Shay threw a bottle at the apartment. They demanded that T. come out for "round two."

Eventually, two individuals – a teenager named D.J. and an adult named Jermell – emerged from the apartment. D.J., who was about 5'6" tall and 130 pounds, began to fight Freddy, who was about 6'3" tall and 300 pounds. Jermell stood to the side, but took on a fighting stance. LaGrone, who also stood to the side, said that they should keep the fight fair. LaGrone subsequently took his pocketknife – which he carried for his work – off his belt and held it in his hand. Another adult, Wayne, exited the apartment and watched the fight from the side. Neither D.J., Jermell, nor Wayne had any weapons.

While he was fighting Freddy, D.J. stumbled or fell. As Freddy approached D.J., Jermell hit Freddy hard on the back of his head or neck. Seeing this, LaGrone stabbed Jermell in the face. Wayne then punched LaGrone.

---

[1] To protect their privacy, this opinion uses either a first name or first initial to refer to bystanders, witnesses, and victims. (See Cal. Rules of Court, rule 8.90.)

Jermell realized that LaGrone had a knife after LaGrone stabbed him. Jermell grabbed LaGrone and put him in a headlock. Wayne continued punching LaGrone in the head. While this was happening, LaGrone stabbed Jermell in the side and back several times and stabbed Wayne in the stomach and arm. Jermell yelled, " 'He['s] stabbing me.' " After Jermell let go of LaGrone and ran into the house, LaGrone fled.

Jermell called 911, then collapsed and was taken to the hospital with nine or ten stab wounds to his stomach and back. Doctors performed surgery and installed a tube to drain blood from his lungs. Wayne had a minor wound to his bicep and a gash on his stomach that required surgery to repair an intestine.

The altercation was captured on cell phone and surveillance cameras.

**B**.

The prosecutor charged LaGrone with two counts of attempted murder (Pen. Code, §§ 187, subd. (a), 664; counts one and two) and two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); counts three and four).[2] The information alleged that LaGrone personally inflicted great bodily injury (§ 12022.7, subd. (a)) with respect to each count.

At trial, LaGrone asserted that his initial assault of Jermell was legally justified because he was acting in defense of Freddy. Further, his subsequent assaults on Jermell and Wayne were legally justified because he was acting in self-defense.

A defendant may have a complete defense based on self-defense or defense of another if the defendant "actually and reasonably believe[d] in the necessity of defending [him or her]self [or another person] from imminent danger of death or

---

[2] Undesignated statutory references are to the Penal Code.

3

great bodily injury." (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on another ground by *People v. Chun* (2009) 45 Cal.4th 1172, 1201; see also CALCRIM No. 3470.)  These defenses require that "[t]he defendant used no more force than was reasonably necessary to defend against [the] danger." (CALCRIM No. 3470; see also *People v. Pinholster* (1992) 1 Cal.4th 865, 966 (*Pinholster*), disapproved of on another ground by *People v. Williams* (2010) 49 Cal.4th 405, 459.)

According to LaGrone's trial testimony, he did not intend to fight anyone that day and only had a knife with him because he wore it on his belt for work.  He got involved in the fight because Freddy was just a kid and he was worried for his safety after Jermell, a grown man, started assaulting him.  LaGrone was fearful because Jermell appeared younger and bigger than he was.  When he was in the headlock, LaGrone panicked and started swinging his knife wildly.

## C.

The jury found LaGrone not guilty of the attempted murder counts.  The jury found him guilty of the two counts of assault with a deadly weapon, and found true the allegation that he had inflicted great bodily injury in connection with both counts.  The court sentenced LaGrone to an aggregate term of 19 years in prison.

4

# Discussion

## A.

### *Trial Issues*

### 1.

### *Instruction on Contrived Self-Defense*

LaGrone contends that the trial court committed reversible error by instructing the jury that "[a] person does not have a right to self-defense if he provokes a fight or quarrel with the intent to create an excuse to use force."  (See CALCRIM No. 3472.)  We review this claim of instructional error independently (*People v. Waidla* (2000) 22 Cal.4th 690, 733 (*Waidla*)), and we find no prejudicial error.

LaGrone asserts that there was no evidence that he provoked a fight with the intent to create an excuse to use force; instead, his testimony suggested that although he went along with the group, he himself did not take any action to provoke the fight.

Assuming LaGrone's version of events is the only reasonable view of the evidence, he was not prejudiced under either state or federal law.  Where the court provides the jury with an instruction that is a correct statement of the law but is nonetheless inapplicable to the facts of the case, the error is harmless because the jury is presumed to follow the court's instructions.  (See *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1335 ["If CALCRIM No. 3472 was erroneously given because it was irrelevant under the facts, the error is merely technical and not grounds for reversal."]; *People v. Frandsen* (2011) 196 Cal.App.4th 266, 278 (*Frandsen*) ["appellant's assertion that no substantial evidence supported the [giving of CALCRIM No. 3472] does not warrant our finding reversible error because the jury is presumed to disregard an instruction if the jury finds the

5

evidence does not support its application"].)  Here, the trial court instructed the jury that "[s]ome of the[] instructions may not apply, depending upon your findings of the facts of the case.  Do not assume just because I give a particular instruction that I am suggesting anything about the facts.  After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."  (See CALCRIM No. 200.)

Although the prosecutor argued during closing statements that the facts showed LaGrone provoked the fight to create an opportunity to use force, the jury was able to view video footage of LaGrone's interactions with the victims for itself, and defense counsel thoroughly detailed the evidence that LaGrone did not personally act to provoke a fight.  Defense counsel argued that the prosecutor's factual assertions that LaGrone went to the apartment because he had a knife and drew the victims out "are not supported by the evidence."  She played the video evidence and narrated LaGrone's actions throughout, including the fact that "[h]e didn't challenge people in the apartment.  He didn't say anything to them.  He was trying to make very clear with his body language he was not there to engage them. [¶] . . . [¶] [H]is body language[] [was] showing he is not there to be in a confrontation.  He is not there to fight."  Defense counsel noted that when Jermell took on a fighting stance, LaGrone put out his left hand to tell Jermell to stop, get back; she tells the jury, "You can see it in the cell phone video and the surveillance video."  The court also reminded the jurors that they are the "triers of the facts."  The jury was able to view the videos and confirm defense counsel's account, and there is no reason to think the jury would have disregarded the court's instructions.

## 2.

### *Instruction on Mutual Combat and Initial Aggressors*

LaGrone contends that his trial lawyer provided ineffective assistance by requesting that the court instruct the jury on the

6

requirements for self-defense if the person claiming self-defense was the initial aggressor or engaged in mutual combat. We review this question independently. (See *People v. Ledesma* (1987) 43 Cal.3d 171, 219.) We conclude that his counsel's performance was neither deficient nor prejudicial. (*See Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

The court instructed the jury that a fight is "mutual combat when it began or continued by mutual consent or agreement," express or implied, that is formed before the self-defense claim arose. (See CALCRIM No. 3471.) "A person who engages in mutual combat or who starts a fight has a right to self-defense only if[]" he takes specific steps to desist and gives his opponent a chance to stop. (*Ibid.*) Even if a defendant does not take these steps, the defendant may still have a right to self-defense: "if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force." (*Ibid.*) LaGrone does not contend the instruction incorrectly stated the law, but only that it was inapplicable.

Even had defense counsel not requested the instruction, however, the trial court would have been required to give it because there was substantial evidence that LaGrone and his group had agreed to engage in mutual combat with T.'s family members. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1206 ["A trial court must instruct the jury on every theory that is supported by substantial evidence[.]"].) LaGrone went to T.'s house with members of his group knowing there was going to be a fight, brought a knife with him, stayed when the fight began, drew his knife before Jermell started fighting, and entered the fray once Jermell did. Similarly, Jermell took up a fighting stance once D.J. and Freddy began fighting, before he joined the fight. These facts provide "evidence from which the jury could

7

reasonably find that both combatants actually consented or intended to fight before the claimed occasion for self-defense arose." (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1046-1047 (*Ross*); see also *People v. Jackson* (2014) 58 Cal.4th 724, 760-761 [jury could reasonably infer that two gangs agreed to mutual combat based on evidence that the gangs had fought previously and the two groups were milling around near each other in the prison yard].) Alternatively, the jury could have concluded that LaGrone was the initial aggressor with respect to Jermell if it disbelieved LaGrone's assertion that he entered the fray to defend Freddy.

Neither could there have been any prejudice. The jury heard the prosecution's factual argument that LaGrone was the initial aggressor as well as the defense's argument that the instruction was inapplicable because he was neither the initial aggressor nor a mutual combatant. If the jury concluded that LaGrone had not agreed to engage in mutual combat or was not the initial aggressor, then the jury "would . . . presumably [have] ignore[d] the instruction." (*Ross*, *supra*, 155 Cal.App.4th at p. 1056; see also *Frandsen*, *supra*, 196 Cal.App.4th at p. 278.) LaGrone has therefore failed to establish that, but for any error, there is a reasonable probability that the result would have been different. (See *Strickland*, *supra*, 466 U.S. at p. 694.)

**3.**

*The trial court's response to the jury's questions*

LaGrone contends that the trial court erred by providing an inadequate response when the jury asked questions concerning self-defense. We conclude that the court's response was accurate and appropriate, and, to the extent its response could have been more complete, any error was harmless.

**a.**

Section 1138 imposes a duty on the trial court to provide a deliberating jury with requested information on questions of law. (See *People v. Lua* (2017) 10 Cal.App.5th 1004, 1016 (*Lua*).)  If the original jury instructions are " ' "full and complete, the court has discretion under . . . section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." ' " (*Ibid*.)  We review the trial court's decision whether to provide additional instruction for abuse of discretion. (*Waidla*, *supra*, 22 Cal.4th at pp. 745-746.)  If the court decides to give a supplemental instruction, " 'its correctness presents a question of law that we review de novo. ' " (*People v. Doane* (2021) 66 Cal.App.5th 965, 980. )

**b.**

During deliberations, the jury asked the court: "Does a lack of valid defense-of-another in one event preclude a valid self-defense in a subsequent, related incident whether by initial aggressor, contrived defense, etc.?"  After discussing the question and response with the parties, the court directed the jurors to the instructions on self-defense or defense of another (CALCRIM No. 3470), mutual combat and initial aggressors (CALCRIM No. 3471), and contrived self-defense (CALCRIM No. 3472).  The court then told the jury: "It could be that we're not clear what this question is actually asking for . . . . So, if 3470, 3471 and 3472 do not clearly answer your question, please draft another question . . . [so] that we're clear about what you are asking about."

The jury then sent a follow-up question about imperfect self-defense, which reduces an unlawful killing or attempted killing from murder to manslaughter when a defendant believes that he or another person is in imminent danger of suffering bodily injury and that the imminent use of deadly force is necessary to defend against that danger, but at least one of those

9

beliefs is unreasonable. (See *People v. Elmore* (2014) 59 Cal.4th 121, 134; CALCRIM No. 604.) The jury asked: "If we find the defendant acted in imperfect defense of another initially, does that preclude a use of complete self defense later on as events continued? [¶] I.e., does an initial use of unreasonable force mean the entire use of force [–] referring to the time from when the knife is first swung until the defendant retreats [–] remains unreasonable regardless of the situation? Is a user of unreasonable force automatically the aggressor?"

After discussing with the parties, the court provided the following response to the jury:

> A victim may respond to an attacker's initial physical assault with a physical counterassault.
>
> A person who contrives to start a fistfight or provoke a nondeadly quarrel does no[t] forfeit the right to self-defense if the adversary responds with deadly force.
>
> Imperfect self-defense does not apply if a defendant's conduct creates circumstances where the victim is legally justified in resorting to self-defense. Imperfect self-defense is available "when the victim's use of force against the defendant is unlawful, even when the defendant set in motion the chain of events that led the victim to attack the defendant."
>
> Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction[] that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them.

10

**c.**

LaGrone contends that the court failed to address the jury's question about whether lack of a valid self-defense claim or use of unreasonable force in an initial event precludes a valid self-defense claim in a subsequent, related event. According to LaGrone, the correct answer to this question in the abstract is "no." However, the trial court's "duty to instruct the jury on the applicable principles of law derives from the facts before it." (*People v. Ramirez* (2015) 233 Cal.App.4th 940, 948 (*Ramirez*).) In the circumstances of the case, given his use of a deadly weapon against Jermell, LaGrone is incorrect.

The facts were that LaGrone stabbed Jermell in the face after Jermell assaulted Freddy. Wayne then punched LaGrone and Jermell saw LaGrone's knife and put LaGrone in a headlock. Wayne continued punching LaGrone while LaGrone stabbed Jermell and Wayne, and Jermell yelled that LaGrone was stabbing him. The jury was asking whether, assuming the defendant used unreasonable force initially (presumably, by stabbing Jermell in the face), would that preclude the defendant from having a valid self-defense claim in response to Jermell putting him in a headlock or Wayne punching him.

Neither self-defense nor imperfect self-defense are available if a defendant's actions give rise to circumstances where the victim is legally justified in resorting to self-defense. (See *People v. Enraca* (2012) 53 Cal.4th 735, 761 (*Enraca*); see also *People v. Vasquez* (2006) 136 Cal.App.4th 1176, 1179.) As the court's response correctly instructed the jury, "a victim may respond to an attacker's initial physical assault with a physical counterassault." (See *Ramirez*, *supra*, 233 Cal.App.4th at p. 947.) As a result, when an attacker makes a " 'deadly' assault, there can be no incommensurate or unjustifiable response by the victim: he or she is fully entitled to use deadly force and the defendant has no right to claim self-defense against those deadly

11

measures." (*Ibid*.; see also *Frandsen*, *supra*, 196 Cal.App.4th at p. 273 ["a defendant may not use force to defend himself against a victim's resort to lawful deadly force"].) Thus, for example, "a defendant who assaults his victims with a gun may not set up a valid self-defense claim with evidence he believed the victims also reached for a gun, since they would be justified in meeting deadly force with deadly force." (*Ramirez*, at p. 948.) At that point, such a defendant has the option of fleeing or taking what is coming to him. (See *Frandsen*, at p. 275.)

Applied to the facts here, if LaGrone acted unreasonably in using deadly force against Jermell, then Jermell would have been justified in defending himself, such as by putting LaGrone in a headlock. Similarly, if LaGrone acted unreasonably in attacking Jermell, then Wayne would have been entitled to act in defense of Jermell, including by punching LaGrone. (Cf. *Enraca*, *supra*, 53 Cal.4th at p. 762 [after defendant unreasonably shot first victim, he "could claim neither perfect nor imperfect self-defense in the shooting of" the second victim; second victim would have acted reasonably in using force because he "would have reasonably believed he would be shot next"].) LaGrone would not have been able to establish that he subsequently stabbed either Jermell or Wayne in self-defense because Jermell and Wayne's assaults would have been justified as self-defense and defense-of-another. (See *Frandsen*, *supra*, 196 Cal.App.4th at pp. 274-275.)

The court's response appropriately directed the jury's attention to the relevant legal principles and allowed the jury to apply those principles to the facts as it found them. The court accurately advised the jury that a victim has a right to respond to an attack with a counterassault; even if the victim is the initial aggressor, the victim may act in self-defense in response to the opponent's use of deadly force; and imperfect self-defense is unavailable to a defendant who creates circumstances that legally justify the victim's self-defense. We disagree with

12

LaGrone that the court erred in declining to provide a simple "yes" or "no" answer, as the answer depended on the specific facts as the jury found them. Further, we note that the jury had a complete set of instructions on self-defense or defense of another, mutual combat and initial aggressors, and contrived self-defense to which they could refer.

It is true that the court's response would have been more complete had it instructed the jury that neither self-defense nor imperfect self-defense are available in response to a victim's resort to lawful force. However, any error in this regard could not have prejudiced LaGrone. Had the court directly stated that self-defense was likewise unavailable in these circumstances, the jury would have rejected LaGrone's self-defense arguments with respect to Jermell and Wayne's assault if it concluded that LaGrone used unreasonable force when he initially stabbed Jermell. (Cf. *People v. Hill* (1992) 3 Cal.App.4th 16, 26 [error in responding to jury's question was harmless because had the court directly answered "the jury's hypothetical question, the jury . . . would have been led inexorably to the identical verdict that was in the event returned"], disapproved on another ground by *People v. Nesler* (1997) 16 Cal.4th 561, 582 fn. 5.)

LaGrone further argues that the court should have made clear that even if the jury concluded that he did not have a claim that he was trying to defend Freddy when he assaulted Wayne, that would not have precluded the jury from finding that he had a valid self-defense claim with respect to Wayne. However, the jury clarified that it was seeking guidance about the implications of a conclusion that LaGrone initially used unreasonable force, and the court appropriately directed its response to this question.

Although the court did not directly respond to the jury's question whether "a user of unreasonable force [is] automatically the aggressor," a court need not always elaborate on the standard instructions if the instructions given already provide a complete

13

answer. (See *Lua, supra,* 10 Cal.App.5th at pp. 1016-1017.) CALCRIM No. 3471, which the trial court provided to the jury, reflects that an initial aggressor is a person "who starts a fight." Moreover, the court's response clarified that even when the defendant was responsible for setting in motion the chain of events that led the victim to attack the defendant, the defendant has a right to defend himself against a victim's use of unlawful force. Under these circumstances, the trial court did not err.

**4.**

*Error based on prosecutor's statements about bringing a knife to a fistfight*

LaGrone asserts that the prosecution committed misconduct by repeatedly telling the jury that bringing a knife to a fistfight is not self-defense, the trial court erred in failing to address this misconduct, and defense counsel committed ineffective assistance of counsel by failing to object to every instance of such misconduct. We disagree that the prosecutor's comments constituted misconduct.

A prosecutor's conduct violates the Fourteenth Amendment to the United States Constitution " ' " 'when it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' " (*People v. Adams* (2014) 60 Cal.4th 541, 568.) Under state law, a prosecutor's conduct is unlawful " ' " 'only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' " ' " (*Ibid.*) " ' " When a claim of misconduct is based on the prosecutor's comments before the jury, . . . ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. " ' " ' " (*Ibid.*) We generally review a trial court ruling on prosecutorial misconduct for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 213.)

14

Here, several of the statements cited by LaGrone merely reflect the prosecutor's permissible characterization of the facts: he asserted that LaGrone brought a knife to a fistfight or brought a knife with him when he went to the victims' home. During argument, prosecutors have latitude to express their " 'views as to what the evidence shows and to urge whatever conclusions [they] deem[] proper.' " (*People v. Panah* (2005) 35 Cal.4th 395, 463; see also *People v. Rodriguez* (2020) 9 Cal.5th 474, 480 (*Rodriguez*).) It was up to the jury to determine whether the prosecutor's characterization of the facts was accurate.

LaGrone also contends that the prosecutor misstated the law when he repeatedly told the jury during closing argument that "[y]ou don't get self-defense when you bring a knife to a fistfight." However, considered in context, the prosecutor's comments amounted to permissible argument that self-defense was not applicable because LaGrone used more force than was reasonably necessary. (See, e.g. *Rodriguez*, *supra*, 9 Cal.5th at p. 480 [the court considers the prosecutor's " 'statements in the context of the argument as a whole' "].) The prosecutor made clear that the critical question was whether the defendant's actions were reasonable. For example, he explained that the doctrines of self-defense or defense of another reflect that

> [a]s a society, we have carved out these notches that have said in these certain circumstances, it was so reasonable in your actions, we can't hold that against you. It was so reasonable that you should not be convicted of a crime. . . . That's what self-defense is. That's not this situation. . . .
>
> You don't get self-defense when you bring a knife to a fistfight.

A short while later, the prosecutor told the jury that the question before them was "[i]n that situation, would a reasonable person, under similar situations, similar beliefs think it was

15

reasonable to pull out a knife and start stabbing those two people before saying, stop, before trying to break it up, knowing no one else had weapons, not trying to pull anybody off?" The prosecutor stated:

> You are only entitled to use the amount of force that a reasonable person would believe is necessary in the same situation.

> If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense or defense of another. . . .

> No matter which way you look at it, you don't pull out a knife and start stabbing people, not without throwing a punch first.

> [¶] . . . [¶]

> It was more force than was reasonable. Force exceeded the situation. You don't get to use a knife at a fistfight.

The prosecutor returned to this point several times: "It's not reasonable when you stab someone because you think you won't win a fistfight." The prosecutor argued: "It's not reasonable. There was no imminent danger of suffering bodily injury because it was a fistfight." "Did the defendant reasonably believe that the immediate use of force was necessary? No. It was not reasonable." And the prosecutor repeated that LaGrone "used way more force than was reasonably necessary. He concealed a deadly weapon to a fistfight." The prosecutor was entitled to argue that, based on the circumstances, LaGrone was not acting in self-defense because he used more force than was reasonably necessary. (See, e.g., *Pinholster*, *supra*, 1 Cal.4th at p. 966 ["The right of self-defense did not provide defendant with any justification or excuse for using deadly force to repel a nonlethal attack."]

16

Thus, because the prosecutor's comments were permissible argument, neither the trial court nor defense counsel erred in the instances in which they declined to address them.

**5.**

*Cumulative Prejudice*

We reject LaGrone's argument that the errors he alleges cumulatively violated his rights to due process and a fair trial. Taken together, the errors we have identified – providing a correct but potentially inapplicable jury instruction on contrived self-defense and failing to expressly instruct the jury that self-defense is unavailable if the victim's use of force is lawful – were harmless. We have explained that the court instructed the jury that some of the jury instructions were inapplicable depending on the jury's factual findings, and we presume the jury disregarded inapplicable instructions. (*Frandsen*, *supra*, 196 Cal.App.4th at p. 278.) Further, expressly instructing the jury that self-defense was unavailable if a defendant's conduct creates circumstances justifying a victim's use of force would have made a guilty verdict more, not less, likely. And although we have assumed error with respect to other of LaGrone's contentions, we have found no prejudice. Cumulative prejudice thus did not deprive LaGrone of a fair trial. (See, e.g., *People v. Suarez* (2020) 10 Cal.5th 116, 192.)

**B.**

*Sentencing*

The parties agree, as do we, that the trial court erred in calculating the great bodily injury enhancement applicable to LaGrone's sentence for count four, his subordinate term for assault with a deadly weapon. The normal enhancement for inflicting great bodily injury is three years (§ 12022.7, subd. (a)), and the trial court added three years for that enhancement on count four. Under section 1170.1, subdivision (a), however, the

17

applicable enhancement for a subordinate term is one-third the normal term, or in this case, one year.  (See § 1170.1, subd. (a) ["The subordinate term for each consecutive offense . . . shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."].)  We therefore modify the judgment to reduce the enhancement for great bodily injury on that count from three years to one year. (See § 1260; *People v. Beck & Cruz* (2019) 8 Cal.5th 548, 665.)

## DISPOSITION

The judgment is modified to provide that the enhancement for great bodily injury on count four is one year.  On remand, the trial court shall issue an amended abstract of judgment consistent with this modification.  So modified, the judgment is affirmed.

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

NEEDHAM, J.

A160959