Filed 5/14/21  P. v. Ramos CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS RAMOS,<br><br>    Defendant and Appellant. | B304855<br><br>Los Angeles County<br>Super. Ct. No. BA442346 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Kennedy, Judge. Affirmed.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant Luis Ramos of first degree murder, four counts of attempted murder, and shooting at an occupied motor vehicle. The jury also found firearm and gang allegations true. The court sentenced defendant to an aggregate prison sentence of 210 years to life and imposed various fines and fees without objection.

Defendant contends he is entitled to a new trial because the prosecutor committed misconduct during her closing argument when she briefly alluded to the idea that communities in Los Angeles are tired of gun violence and gang violence. We conclude no misconduct occurred. And we reject defendant's further claim of prosecutorial misconduct in the form of improper vouching as forfeited because he failed to raise an objection in the trial court.

Defendant also argues the court violated his due process rights when it imposed a $300 restitution fine, a $40 court operations fee as to each count, and a $30 criminal conviction fee as to each count, without first determining his ability to pay the fine and fees as required under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Because defendant's sentencing hearing occurred more than one year after *Dueñas* was decided and he failed to raise an appropriate objection, we conclude the argument is forfeited. Accordingly, we affirm the judgment.

## PROCEDURAL BACKGROUND

The People charged defendant[1] by amended information with one count of first degree murder (count 1; Pen. Code, § 187, subd. (a)),[2] four counts of attempted premeditated murder (counts 2–5; §§ 664, 187, subd. (a)), and one count of shooting at an occupied motor vehicle (count 7; § 246).[3] All counts included allegations that a principal personally used and personally and intentionally discharged a firearm causing great bodily injury. (§ 12022.53.) The People also alleged that counts 1–5 were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and that count 7 was committed with the intent to promote, further, and assist in criminal conduct by a gang. (§ 186.22, subd. (b)(4).)

A jury convicted defendant on all counts and found the firearm and gang allegations true. The court sentenced defendant to an aggregate term of 210 years to life in state prison. On the base count of first degree murder, the court sentenced defendant to 50 years to life (25 years to life for the murder, 25 years to life for the firearm enhancement); on counts 2–5, the court sentenced him to 40 years to life for each count (15 years to life for the attempted murder, 25 years to life for firearm enhancement) to run consecutive; and on count 7, the court imposed a sentence of 32 years to life (7 years for the shooting, 25 years to life for the

---

[1] Josue Garcia was also charged with all counts in the amended information. Defendant and Garcia were tried together. Garcia is not a party to this appeal.

[2] All undesignated statutory references are to the Penal Code.

[3] Count 6 related only to Garcia.

firearm enhancement). The court stayed the sentence on count 7 under section 654.

The court also ordered defendant to pay a $300 restitution fine (§ 1202.4), a $30 criminal conviction assessment fee for each of counts 1 through 5 (Gov. Code, § 70373), a $40 court security fee for each of those five counts (§ 1465.8), $4,805 in victim restitution (§1202.4, subd. (f)), and a parole revocation fine (§ 1202.45), which the court stayed. Defendant did not ask the court to determine whether he had the ability to pay the fines and fees, nor did he otherwise object to the court's imposition of the fines and fees.

Defendant timely appeals.

## FACTUAL BACKGROUND

In the early morning hours of September 28, 2013, Edwin Jurado was at a nightclub in Los Angeles. Jurado was drunk and became involved in a dispute with approximately six members of the Park View clique of the MS-13[4] gang. After Jurado struck one of the female gang members, a security guard detained Jurado and walked the gang members out of the club. As they left the club, one of the gang members said that they planned "to pop the guy out." Jurado was a member of a rival street gang.

The gang members headed from the club to a nearby apartment where they discussed the incident at the club and decided to "go give a lesson to somebody that had disrespected them." Defendant, a senior member of the Park View clique, and his girlfriend were at the apartment. Shortly after 2:00 a.m., defendant (who was armed) and the other gang members (at least

---

[4] MS-13 refers to La Mara Salvatrucha gang.

two of whom were armed) drove back to the area of the nightclub and found Jurado walking nearby. The gang members, including defendant, got out of their cars and attacked Jurado.

While the attack was in progress, a group of four men drove by and saw that the victim, Jurado, was not defending himself. They decided to help the victim and stopped their car near the fight. One passenger got out of the car and immediately heard gunshots. He was injured and then ran to a nearby subway station to summon help. Another passenger attempted to get out of the car but as he opened the car door, one of the armed gang members kicked the door closed and fired into the car, shattering the front driver's side window. The driver sped away from the scene.

Defendant fatally shot Jurado three times in the chest and abdomen.

## DISCUSSION

Defendant asserts he was denied a fair trial due to prosecutorial misconduct he alleges took place during closing argument. He also argues the court erred by imposing a restitution fine and court fees without first determining whether he had the ability to pay them. Neither of these arguments has merit.

### 1. The prosecutor did not commit misconduct.

#### 1.1. Standard of Review

"We review claims of prosecutorial misconduct pursuant to a settled standard. 'Under California law, a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without

such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights—such as a comment upon the defendant's invocation of the right to remain silent—but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " ' (*People v. Riggs* (2008) 44 Cal.4th 248, 298; *People v. Crew* (2003) 31 Cal.4th 822, 839.) In addition, ' "a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]" ' (*People v. Stanley* [(2006)] 39 Cal.4th [913,] 952.) Objection may be excused if it would have been futile or an admonition would not have cured the harm. (See *People v. Hill* (1998) 17 Cal.4th 800, 820.)" (*People v. Dykes* (2009) 46 Cal.4th 731, 760.)

### 1.2. Additional Facts

Defendant asserts that the prosecutor committed misconduct during her closing argument. The bulk of her argument focused on the evidence presented and the elements of the crimes charged. And as she drew near the end of her argument, the prosecutor reviewed the evidence of gang membership and gang violence relevant to the gang allegations. Then, the prosecutor argued as follows: "Just to bring this to a close, [the co-prosecutor] and I are prosecutors here in the State of California, and specifically here in Los Angeles. We work for the Los Angeles County District Attorney's Office. And this is a community. Lots of communities that are tired of gun violence,

6

tired of gang violence. I was looking at news headlines recently and I saw this headline (indicating). What a sad state. What a sad view of our community. And so, having heard the evidence in this case and having heard the law that applies, we are asking you to find the defendants—hold them accountable and find them guilty. Thank you all for your time." The court then dismissed the jurors for a 15-minute break.

After the jury left the courtroom, defense counsel objected to a slide the prosecutor displayed during the closing portion of her argument that apparently included a headline reading, "Niger's Government Asked the U.S. to Arm Its Drones. People Aren't Sure They Like the Idea. I Know America, You Can Be Shot in Broad Daylight." During an extended colloquy with counsel, the court repeatedly questioned the relevance of the headline to the case as it did not relate to MS-13 in particular or gang violence generally. Despite impassioned argument from counsel, the court overruled defendant's objections.

After the jury returned to the courtroom, and at defendant's request, the prosecutor displayed the slide briefly while the court admonished the jury as follows: "There is a particular slide; it was utilized during the prosecutor's argument. It is irrelevant to the issues in this case, and I am instructing you to disregard the information from that slide." The court then directed the prosecutor to take the slide off the screen, which she did.

### 1.3. Analysis

Defendant contends the prosecutor's use of the headline and her reference to the impact of violence on the community generally was an improper reference to evidence not available to the jury. " ' "Statements of supposed facts not in evidence ... are a

highly prejudicial form of misconduct, and a frequent basis for reversal." ' " (*People v. Rodriguez* (2020) 9 Cal.5th 474, 480.) We reject this argument for several reasons.

First, with respect to the headline, the jury was instructed to disregard the offending slide because it was irrelevant. We presume the jury followed these instructions. (See, e.g., *People v. Avila* (2009) 46 Cal.4th 680, 719; *People v. Ledesma* (2006) 39 Cal.4th 641, 684.)

Second, and in any event, the prosecutor's remarks were not improper. " 'It is settled that a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.] It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.' " (*People v. Wharton* (1991) 53 Cal.3d 522, 567.) The prosecutor's comment about communities being tired of gun violence and gang violence relates to the widely acknowledged gang violence problem in Los Angeles, something surely—and unfortunately—within the general knowledge or common experience of jurors residing in this city.

Third, the prosecutor's reference to the impact of violence on the community and her display of the headline were incredibly brief and unlikely to have influenced the jury to a significant degree. The transcript suggests that the comments and display of the headline lasted less than 30 seconds. Additionally, the statements about community violence were de minimis. As noted, the prosecutor's closing argument, which comprises 66 pages in the reporter's transcript, focused on the evidence and the charges.

The portion to which defendant objects comprises less than one-half of one page in the transcript. (See *People v. Anderson* (2018) 5 Cal.5th 372, 415 [noting that "[t]o the extent the prosecutor's language, 'I believe with all my heart,' could be viewed as invoking his personal prestige or depth of experience, the brief remark could not have been prejudicial"].)

Finally, even if the prosecutor's brief commentary was improper, there is no reasonable likelihood that the result would have been different. (*People v. Ayala* (2000) 24 Cal.4th 243, 288.) Substantial evidence supports the jury's verdicts and defendant does not contend otherwise. Further, it is unlikely that the jurors would have focused on the headline, given that even the court struggled to understand the connection between the headline (relating to the use of armed drones in Niger) and the case before it. The jury was, in any event, instructed that the attorney's statements were not evidence. And we presume " 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Morales* (2001) 25 Cal.4th 34, 47.)[5]

Defendant also asserts that the prosecutor's reference to the District Attorney's office during her closing argument constituted improper vouching. Defendant failed to raise this issue below and it is therefore forfeited. "As a general rule a defendant may not complain on appeal of prosecutorial

---

[5] Because we conclude the prosecutor did not commit misconduct with respect to the headline and the comments identified by defendant, we need not consider defendant's dependent claim that the prosecutor's brief reference to violence in the community was part of "a pattern and practice that show[s] the misconduct was calculated[,] deliberate and reprehensible. (*People v. Cole* (2004) 33 Cal.4th 1158, 1203.)"

misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841; *People v. Dalton* (2019) 7 Cal.5th 166, 251.)

**2.      Defendant forfeited his challenge to fines and fees.**

Citing *People v. Dueñas*, *supra*, 30 Cal.App.5th 1157, defendant contends the court violated his due process rights when it imposed, without first determining his ability to pay, a $300 restitution fine (§ 1202.4, subd. (b)), five $40 court operations assessments (§ 1465.8), and five $30 court facility assessments (Gov. Code, § 70373, subd. (a)(1)). In January 2019, *Dueñas* held that "due process of law requires [a] trial court to ... ascertain a defendant's present ability to pay before it imposes" (1) "court facilities and court operations assessments" (under § 1465.8 and Gov. Code, § 70373, respectively), or (2) a restitution fine (under § 1202.4). (*Dueñas,* at pp. 1167, 1172.)

Defendant concedes that he did not object to the imposition of these costs, even though *Dueñas* was decided more than one year before his sentencing hearing. Typically, a defendant who fails to object to the imposition of fines, fees and assessments at sentencing forfeits the right to challenge them on appeal. (See, e.g., *People v. Aguilar* (2015) 60 Cal.4th 862, 864; *People v. Trujillo* (2015) 60 Cal.4th 850, 856–859; *People v. McCullough* (2013) 56 Cal.4th 589, 596–597.) Applying this general rule, we conclude the issue was forfeited in this case.[6]

---

[6] Defendant attempts to excuse his failure to object by arguing that "there was not enough time realistically for the practicing trial bar, and perhaps trial courts, to be informed of the change in the law

Defendant notes some courts of appeal have concluded that the failure to raise the issue of a defendant's inability to pay fines and fees at sentencing does not result in forfeiture and he urges us to follow those cases. (See *People v. Montes* (2021) 59 Cal.App.5th 1107, 1117–1121 [analyzing conflicting court of appeal decisions and concluding *Dueñas* was not foreseeable]; *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 [holding that because *Dueñas* announced a new constitutional principle, forfeiture doctrine did not apply]; cf. *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153 [defendant forfeited challenge to assessments and restitution fine because counsel failed to object].) The cases defendant relies upon, however, all involved sentencing proceedings that took place before *Dueñas* was final and they are therefore inapplicable here.

Finally, defendant suggests that he is indigent and therefore unable to pay the objected-to fines and fees because he was represented at trial by a public defender and is represented on appeal by counsel appointed by this court. Those facts are insufficient, standing alone, to establish indigency. (See, e.g., *People v. Frandsen, supra,* 33 Cal.App.5th at p. 1153 [rejecting defendant's request to determine his alleged inability to pay fines and fees "based on a record that contains nothing more than his reliance on appointed counsel at trial"].)

---

brought about by *Dueñas'*[s] holding." Given *Dueñas*'s significance and the resulting conflict among the courts of appeal regarding its propriety, we disagree.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.