Filed 1/17/23  P. v. Massie CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUIS JESUS MASSIE,<br><br>Defendant and Appellant. | F083624<br><br>(Super. Ct. No. BF183483A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

David W. Beaudreau, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following a jury trial, defendant Luis Jesus Massie was convicted of receiving a stolen vehicle, driving or taking another's vehicle, evading a peace officer, bringing a controlled substance into jail, and possessing a controlled substance. In this appeal, defendant challenges only the drug convictions. He contends (1) the evidence was insufficient to sustain the conviction for bringing a controlled substance into jail, (2) both drug convictions should be reversed due to either prosecutorial misconduct or ineffective assistance of trial counsel, and (3) in the alternative, if we uphold the drug convictions, the case should be remanded for a full resentencing under the new discretion afforded to the trial court by recent amendments to Penal Code section 654.[1] We remand for the trial court to resentence defendant with the benefit of newly amended section 654. In all other respects, we affirm.

## PROCEDURAL SUMMARY

By second amended information filed on November 1, 2021, the District Attorney of Kern County charged defendant with two counts of receiving a stolen vehicle (§ 496d, subd. (a); counts 1 & 2), driving or taking another's vehicle (Veh. Code, § 10851, subd. (a); count 3), evading a peace officer (Veh. Code, § 2800.2; count 4), possession of ammunition as a previous offender (§ 30305, subd. (a)(1); count 5), bringing a controlled substance into jail (§ 4573; count 6), and misdemeanor possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count 7). The second amended information further alleged that defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and had committed the felony offenses charged in counts 2 through 6 while on pretrial release for the felony charge in count 1 (§ 12022.1).

Following a trial, on November 5, 2021, the jury acquitted defendant on count 2 (the second stolen vehicle count) and count 5 (ammunition possession) but found him

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

guilty on all remaining charges. In a bifurcated proceeding, the trial court found the strike and pretrial release allegations to be true.

On December 7, 2021, the trial court sentenced defendant to an aggregate term of 15 years and four months in prison as follows: on count 1, eight years; on count 3, two years, plus a two-year enhancement for commission of the offense while on pretrial release (§ 12022.1), consecutive to the term on count 1; on count 4, 16 months, consecutive to the term on count 3; on count 6, two years, consecutive to the term on count 4; and on count 7, 180 days in jail, stayed pursuant to section 654.

On the same day, defendant filed a notice of appeal.

## FACTUAL SUMMARY

Counts 1 through 5 arose from defendant's arrests for driving stolen vehicles on two occasions and fleeing from authorities on the latter occasion. Because the facts related to those counts are not at issue in this appeal, we omit them except as relevant to the contested convictions on counts 6 and 7, bringing a controlled substance into jail and possessing a controlled substance, respectively.

Defendant's arrest underlying count 1 occurred on November 19, 2020, after an undercover officer observed him starting to drive away in a vehicle that a records check revealed was stolen. The record reflects that defendant was in custody on the November 2020 stolen vehicle charge from at least December 28, 2020, until February 16, 2021, when he was released on bail.

A few weeks later, defendant was arrested again after attempting to evade police in another stolen vehicle. This second arrest, underlying counts 2 through 5, occurred on the night of March 3, 2021. Bakersfield Police Officer Brock Peterson and his partner brought defendant to the Kern County jail for booking the same night. Peterson testified that he followed the below, standard pre-booking procedure with defendant:

> "Prior to booking anyone into the jail we always ask them and tell them, hey, if you have any illegal items or hidden narcotics or contraband on you,

3.

let us know now. And if you don't, if you take it into the jail without letting us know because they'll find it, they have scanners, it's gonna [*sic*] be an additional felony."

Peterson further testified that "[w]hen [he was] at the jail facility on the night in question with defendant," he performed a search of defendant and "located a small plastic bindle of what [he] believed to be heroin" in defendant's "groin region." The bindle contained a single chunk of a dark brown tar-like substance, approximately the size of a quarter. The substance itself weighed about 6.4 grams, and Peterson testified it was a useable amount of narcotics.

Peterson booked the bindle into evidence in the Bakersfield Police Department's property room that same night. Later testing showed that the substance consisted of acetylfentanyl and fentanyl, Schedule I and Schedule II controlled substances, respectively. (See Health & Saf. Code, §§ 11054, subd. (b)(45), 11055, subd. (c)(8).)

The jury heard no testimony about how defendant responded to Peterson's contraband warning or what, if anything, defendant said about the bindle of fentanyl when it came to light.

## DISCUSSION

### I.      Sufficiency of the Evidence

Defendant first contends that there was insufficient evidence to support his conviction for bringing a controlled substance into jail because there was no showing that he rejected a clear opportunity to relinquish the contraband before entering the jail. We conclude that there was substantial evidence to support this conviction.

#### A.      *Standard of Review*

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—

4.

from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) " ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504.) It is well settled that " '[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

### B.    Relevant Law

Section 4573 "makes it a felony for 'any person' to 'knowingly bring[ ] … into any county … jail … any controlled substance' that he is not authorized to possess." (*People v. Low* (2010) 49 Cal.4th 372, 381 (*Low*), quoting § 4573, subd. (a).) The actus reus of the crime is bringing a controlled substance into a jail; and the mens rea is the defendant's knowledge that he possessed the controlled substance and that the location was a jail. (See *Low*, at pp. 381–387; see also CALCRIM No. 2749 [newly added Mar. 2022, accurately reflecting the law as it existed at the time of trial]; cf. *People v. Ross* (2008) 162 Cal.App.4th 1184, 1187–1188 [identifying the mens rea and actus reus for sister statute § 4574, prohibiting bringing deadly weapons into jail].) Section 4573 applies to anyone who "knowingly and voluntarily" brings a controlled substance into a penal institution without authorization, including arrestees being booked for another

crime.  (*People v. Gastello* (2010) 49 Cal.4th 395, 397 (*Gastello*);  see *Low*, at pp. 376, 385–389.)

### C.  *Analysis*

Defendant challenges the sufficiency of the evidence only with respect to the actus reus, disputing that the evidence showed he *brought* a controlled substance into the jail. Defendant does not deny that he possessed fentanyl, but he argues that the prosecutor's failure to elicit testimony as to the precise circumstances surrounding the fentanyl's discovery left the jury to speculate as to whether defendant in fact disclosed the drugs to Peterson before or during the search at the jail.  Defendant emphasizes *Low*'s identification of two "critical factors" for the act prohibited by section 4573: "[T]he lack of any compulsion to bring contraband inside, and the rejection of a clear opportunity to avoid doing so by voluntarily relinquishing the forbidden object or substance before entering the premises."  (*Low*, *supra*, 49 Cal.4th at p. 384.)  Defendant argues that the evidence presented to the jury was insufficient to show that he rejected a clear opportunity to relinquish the contraband before entering the jail.  The People do not dispute that *Low* requires such an opportunity.  They argue that the import of Peterson's testimony was that he gave defendant the admonishment about disclosing contraband before defendant was booked into the jail and that defendant failed to disclose the fentanyl on his person, thereby foregoing his opportunity not to bring in drugs.

#### 1.  The *Low* and *Gastello* Decisions

In the companion cases of *Low* and *Gastello*, decided the same day, the California Supreme Court addressed, among other things, the theory that section 4573 did not, as a matter of statutory interpretation, apply to persons arrested for other offenses and then forcibly brought to jail while in possession of a controlled substance.[2]  (*Low*, *supra*,

---

[2]    The court also addressed and rejected the argument that application of section 4573 in such circumstances violates arrestees' Fifth Amendment privilege against self-incrimination by essentially requiring them to admit to a lesser offense of drug possession to avoid violating

49 Cal.4th at pp. 376, 379–380, 385–389; *Gastello*, *supra*, 49 Cal.4th at p. 400.) The court rejected this theory, viewing it as "immaterial that the defendant was in custody and not present by choice in jail" when the contraband drugs were found during an initial booking search. (*Gastello*, at p. 402; see *Low*, at p. 386 & fn. 8.) What the court found essential, however, was ensuring that the act of bringing in the drugs was voluntary and not "compulsory" or "manufactured" by police. (*Low*, at pp. 376, 384–385.) Thus, in *Gastello*, the court noted that "[t]he critical fact" for ensuring voluntariness "is that an arrestee has the opportunity to decide whether to purge himself of hidden drugs before entering jail, or whether to bring them inside and commit a new crime under section 4573." (*Gastello*, at p. 402.) The court similarly stated in *Low* that "[t]he critical factors are the lack of any compulsion to bring contraband inside, and the rejection of a clear opportunity to avoid doing so by voluntarily relinquishing the forbidden object or substance before entering the premises." (*Low*, at p. 384 [concluding that "such volitional conduct falls within the parameters of section 4573"].)

Thus, the court's discussion of the "critical" nature of a defendant having an opportunity to disclose or discard contraband before entering jail came in the context of deciding that, as a matter of statutory interpretation, section 4573 could apply to arrestees. Neither *Low*, *Gastello,* nor the cases they reference squarely hold—as defendant seems to argue—that the prosecution must prove, as an implied element of the offense, that the defendant rejected an opportunity to disclose or discard contraband before being booked into jail.

*Low* and *Gastello* suggest that a defendant could argue section 4573 *cannot be applied* (again, as a matter of statutory interpretation) if he or she lacked an opportunity to disclose or discard the contraband. (See *Low*, *supra*, 49 Cal.4th at p. 376 [holding that

---

section 4573. (*Low*, *supra*, 49 Cal.4th at pp. 389–393; *Gastello*, *supra*, 49 Cal.4th at p. 403.) Defendant raises no Fifth Amendment challenge to his section 4573 conviction.

7.

"under the circumstances of this case," where the arresting officer gave advance warning and the defendant denied possession, the defendant was not "immune from prosecution under section 4573," given that his act of bringing drugs inside the jail was not compulsory]; *Gastello*, *supra*, 49 Cal.4th at p. 398 ["Under *Low*, an arrestee's 'involuntary' presence in jail does not *negate the elements* of the crime or make prosecution unconstitutional." (Italics added.)].) The court in *Low* indicated that the statute might be inapplicable if a defendant was "forced to bring drugs into jail," if "commission of the act was engineered by the police," or if the defendant "had no choice but to violate section 4573." (*Low*, at p. 385.) However, this reasoning does not necessarily make it an *element* of the crime that the prosecution must prove a defendant rejected an opportunity to relinquish the contraband before entering jail. Indeed, the court's very next lines were: The "[d]efendant entered jail in the possession of methamphetamine that he had previously secreted on his person. Hence, he committed the act that section 4573 proscribes." (*Ibid*.) We further note that the jury was not instructed that rejection of such an opportunity was part of the prosecution's burden of proof—nor is there any indication defendant requested such an instruction.

Because the People do not raise this burden argument, however, we do not here decide it. Moreover, we recognize that voluntariness is an essential element of any criminal offense. (See 1 LaFave, Substantive Criminal Law (3d ed. 2018) § 6.1(c), pp. 572–573 ["criminal liability requires that the activity in question be voluntary"]; *In re David W.* (1981) 116 Cal.App.3d 689, 692 [record did not support finding a violation of § 647, subd. (f) for being intoxicated in a public place where minor "did not voluntarily commit" the crime, having been taken from his home onto the sidewalk by police].) Assuming without deciding that there must be a showing that defendant had the opportunity to avoid bringing drugs into jail to demonstrate the voluntariness of the actus reus and support a conviction under section 4573, we conclude that there was sufficient evidence that defendant was afforded and rejected such an opportunity in this case.

8.

## 2. Opportunity to Relinquish

Defendant argues that the lack of evidence about the circumstances of Peterson's contraband admonishment and defendant's response to it left the jury to speculate that defendant rejected an opportunity to relinquish the drugs he possessed. Specifically, defendant asserts a lack of evidence as to (1) when and where the revelatory search occurred in relation to Peterson's admonishment and (2) how defendant responded to the admonishment, i.e., whether he denied possession of contraband, showed officers where it was, or remained silent. We disagree on both fronts.

First, Peterson's testimony supported a reasonable inference that the fentanyl came to light during a search that occurred after Peterson had advised defendant about the risks of bringing in contraband. Peterson testified that he gave his standard admonishment to defendant in this case, saying, "[H]ey, if you have any illegal items or hidden narcotics or contraband on you, let us know now." It would make no sense for Peterson to give such an admonishment if the fentanyl bindle already had been discovered on, or disclosed by, defendant during a search. Thus, the fact that the admonishment was given at all supports a reasonable inference that it was given before the search.

Peterson's testimony on cross-examination further supports an inference that he gave his standard admonishment after taking defendant to the jail:

> "[Defense counsel:] And you took Mr.—you took [defendant] to the jail. Is that correct?
>
> "[Peterson:] Correct, sir.
>
> "[Defense counsel:] Was Officer Otterness with you too?
>
> "[Peterson:] Yes, sir, he was.
>
> "[Defense counsel:] And then you tell them if you have drugs or something that can cause problems. Kind of spill the beans now, if you will. Right?
>
> "[Peterson:] Yes."

9.

This exchange reinforces a reasonable conclusion that Peterson gave his contraband admonishment after arriving at the jail with defendant and before the search occurred.

Defendant relatedly argues that there was no evidence of whether the revelatory search was conducted inside the jail. However, in the same breath, defendant acknowledges that "the trial evidence proved … that [he] was searched 'at the jail facility.' " Section 4573 prohibits bringing controlled substances into "any county, city and county, or city jail, … *or within the grounds belonging to the institution*." (§ 4573, subd. (a), italics added.) Therefore, evidence that the fentanyl was found or disclosed during a search "at the jail facility" is sufficient to satisfy the location element of section 4573.

As to defendant's second argument, there also was sufficient evidence to allow the jury to reasonably infer that defendant did not take the opportunity to disclose the fentanyl on his person in response to Peterson's admonishment. According to defendant, "the jury could only speculate about whether [he] told officers to search his groin for the bindle, denied possessing contraband, or remained silent." However, two key portions of Peterson's testimony show otherwise.

First, Peterson's response to the prosecutor's initial question about the results of the search at the jail reasonably conveyed that Peterson discovered the bindle on his own, without prior direction or disclosure from defendant. When asked "[w]hat, if anything, was located" during the search at the jail, Peterson responded that he "located" a small bindle of what he "believed to be" heroin in defendant's groin region. He also explained that the reason he believed it to be heroin was "based off of what it looked like." At the bare minimum, this testimony supports a reasonable inference that defendant did not identify the substance to Peterson—i.e., defendant did not say, "I have heroin on me," or, "There is a packet of fentanyl in my pants." Otherwise, Peterson would have had something other than his personal belief and visual assessment to rely upon in identifying the substance.

10.

Moreover, Peterson's use of the verb "located" to describe his acquisition of the bindle—albeit a repetition of the prosecutor's word choice—also supports a reasonable inference that defendant did not direct Peterson to the bindle or verbally disclose it to Peterson before it was revealed. The jury reasonably could have taken Peterson's testimony to mean that Peterson *discovered* the bindle on his own, with no help from defendant. Typically, one does not "locate" an item whose location is already known to the searcher. (See *People v. Venegas* (1998) 18 Cal.4th 47, 80 ["jurors are permitted to rely on their own common sense and good judgment in evaluating the weight of the evidence presented to them"].) Thus, the jury reasonably could have concluded that if defendant had affirmatively disclosed the bindle's existence to Peterson before the search, Peterson's description of acquiring the contraband would have been different.

Second, when the prosecutor later showed Peterson a photograph of the bindle (People's exhibit No. 9), Peterson identified it as the bindle he "took off of [defendant]." The prosecutor then asked: "Would you say that's a fair and accurate depiction of the bindle that you removed from [defendant]'s groin area?" And Peterson replied that it was. This second exchange further supports a reasonable inference that Peterson discovered the bindle without defendant's assistance, since "taking" something "off of" defendant and "removing" something from his person—especially from his groin region—would be an odd way of describing the scenario if defendant had handed Peterson the bindle or even directed him to it. This, combined with Peterson's testimony that "I located a small plastic bindle" on defendant, provides substantial evidence that defendant did not disclose the drugs.

The jury therefore had before it evidence strongly supporting a view of the timeline that added up to a rejection of an opportunity to relinquish the contraband before completing the booking process: first, defendant was warned to disclose any controlled substances he had; second, he failed to do so; and third, a controlled substance was found on him. Therefore, the jury could reasonably conclude that he voluntarily committed the

11.

act of bringing drugs into a jail. (See *Low*, *supra*, 49 Cal.4th at p. 376 [act of bringing drugs inside was not compulsory where the "arresting officer gave advance warning about the prohibitions in section 4573, and [the] defendant violated its terms despite ample opportunity to avoid doing so"]; *Gastello*, *supra*, 49 Cal.4th at p. 402 [reinstating § 4573 conviction where defendant remained silent when warned about bringing drugs into jail, because [the] defendant "ha[d] the opportunity to decide whether to purge himself of hidden drugs before entering jail"]; *People v. James* (1969) 1 Cal.App.3d 645, 648, 650 [finding violation of sister statute § 4574 where the defendant remained silent about his pistol during booking "after he had ample time to surrender it to the jailer"].)

Accordingly, there was sufficient evidence to support defendant's conviction under section 4573.

## II. Prosecutor's Discussion of Facts Not in Evidence

Defendant next argues that both drug convictions should be reversed due to the prejudicial effect of the asserted constitutional and state law violations worked by the prosecutor's discussion of facts not in evidence during his closing arguments.

### A. Additional Background

As mentioned, the jury heard no testimony about how defendant responded to Peterson's contraband warning or to the bindle of fentanyl coming to light. As it happens, the prosecutor *could have* elicited testimony from Peterson on both subjects, based on the testimony Peterson gave (before the court only) at a pretrial hearing on defendant's unsuccessful motion in limine to exclude certain incriminating statements he made to Peterson at the jail. However, that testimony was not brought out at trial.

Nevertheless, the prosecutor presented his closing arguments regarding the drug offenses as though Peterson *had* testified at trial on those subjects. In discussing count 6, the prosecutor told the jury that, in response to Peterson's admonishment, defendant "didn't say anything." The prosecutor then told the jury that Peterson asked defendant

12.

about the bindle after it came to light and told them that defendant "said, hey, I—I thought I would get away with it. I did it in the past." The prosecutor argued:

> "That shows knowledge of the fact that [defendant had a] controlled substance on his person. And it shows that, you know, consciousness of guilt that he underst[ood] that what he was trying to do was wrong and that has been proven."

In discussing count 7 (simple possession), the prosecutor repeated defendant's statement not in evidence, telling the jury:

> "It was discovered [defendant] had that on his person in his groin area, a plastic bindle. [D]efendant knew of its presence. How do we know that he knew of its presence? His own statements. He tells the officer, hey, I thought I could get it in. I got away with it last time. That's how we know."

Defense counsel did not object to any portion of the prosecutor's closing arguments.

Defendant urges us to reverse on grounds of prosecutorial misconduct, despite the lack of objection; or, if we find that claim forfeited, defendant seeks reversal due to ineffective assistance of counsel for failing to object. The People concede the prosecutor erred by referring to defendant's purported jailhouse statements but argue that any claim of error was forfeited and that the prosecutor's references did not deprive defendant of due process or prejudice the outcome of the case.

### B. Relevant Law

"Under the federal Constitution, a prosecutor's behavior deprives a defendant of his rights 'when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' [Citations.] Conduct that falls short of that standard 'may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury.' " (*People v. Gamache* (2010) 48 Cal.4th 347, 370–371.) "To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an

13.

improper or erroneous manner." (*Id.* at p. 371.) "The focus of the inquiry is on the effect of the prosecutor's action on the defendant, not on the intent or bad faith of the prosecutor." (*People v. Hamilton* (2009) 45 Cal.4th 863, 920.)

To warrant reversal, of course, the error must also be prejudicial. Errors that violate federal constitutional rights are prejudicial unless the People "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman v. California* (1967) 386 U.S. 18, 24.) "To say that an error did not contribute to the verdict is … to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates v. Evatt* (1991) 500 U.S. 391, 403.) Errors under California law are prejudicial when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) A reasonable probability "does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, italics omitted.)

### C. Analysis

Assuming the prosecutorial misconduct claim was not forfeited,[3] reversal is not warranted because the duly admitted evidence of defendant's guilt was so strong that we are convinced the prosecutor's improper discussion of defendant's purported jailhouse statements did not contribute to the jury's findings on counts 6 and 7.

We agree with the parties that the prosecutor erred in his closing arguments. (See *People v. Rodriguez* (2020) 9 Cal.5th 474, 480 ["Referring to facts not in evidence is

---

[3]  We are willing to assume that this claim is cognizable on appeal because any admonition to disregard the incriminating statements not in evidence would carry a high likelihood of only calling more attention to them and a low chance of erasing them from the jury's mind. (See *People v. Panah* (2005) 35 Cal.4th 395, 462 [one of the two futility-based forfeiture exceptions is that failure to object does not forfeit the claim on appeal if "the admonition would have been insufficient to cure the harm occasioned by the misconduct"].)

14.

'clearly' misconduct 'because such statements "tend[ ] to make the prosecutor his own witness—offering unsworn testimony not subject to cross-examination." ' "].) In addition, there is a good likelihood that the jury applied the prosecutor's erroneous comments in an improper manner because the prosecutor explicitly told the jury that defendant's purported jailhouse statements proved the knowledge elements (the mens rea) for both drug offenses. (See *Low*, *supra*, 49 Cal.4th at p. 386 [mental state required for § 4573 requires no intent or purpose beyond the knowledge required for simple possession of a controlled substance: "[A]n awareness of both its physical presence and narcotic character"]; *People v. Martin* (2001) 25 Cal.4th 1180, 1184 [elements of unlawful possession].)

The central question is whether the prosecutor's mistake—and there is no suggestion it was anything but—was sufficiently prejudicial to require reversal of the convictions on counts 6 and 7. " ' "Statements of supposed facts not in evidence … are a highly prejudicial form of misconduct, and a frequent basis for reversal." ' " (*People v. Rodriguez*, *supra*, 9 Cal.5th at p. 480.) As defendant points out, such statements " 'can be "dynamite" to the jury because of the special regard the jury has for the prosecutor.' " (*Ibid*.) However, in this case, any improper reliance on the prosecutor's statements was harmless because the duly admitted evidence of defendant's culpable mental state was overwhelming.

Before learning of defendant's purported incriminating statements, the jury had before it evidence that "at the jail facility" defendant was carrying in his "groin region" a plastic baggie containing a "chunk" or rock of fentanyl about the size of a quarter. This is about as incriminating a set of circumstances as one can imagine when it comes to proving knowing possession of an illicit substance. No reasonable juror could conclude that defendant was unaware of a quarter-size rock near his groin—the location of which, itself, strongly indicates that defendant knew he should not be carrying it and did not wish for it to be found. (See *People v. Tripp* (2007) 151 Cal.App.4th 951, 956

15.

["suspicious conduct indicating a consciousness of guilt" is circumstantial evidence of a defendant's knowledge of the presence and nature of the controlled substance].)

Defendant argues that the closing reference to his purported jailhouse statements improperly "bolstered" the evidence of his knowledge. Even if so, the knowledge element being bolstered was already resting on a very solid foundation. This convinces us that, beyond a reasonable doubt, the prosecutor's improper references did not contribute to the jury finding the mens rea elements satisfied for counts 6 and 7; and there was no more than an abstract possibility that any juror would have found these elements missing but for the prosecutor's error. (See *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1535 [for claims of prosecutorial error, "[o]ur state Supreme Court has repeatedly found the harmless error standards met when the evidence of guilt is so strong that the jury would have reached the same verdict regardless of the error"]; *People v. Houston* (2012) 54 Cal.4th 1186, 1223 [prosecutor's error was harmless under either *Chapman* or *Watson* "given the overwhelming evidence of [the] defendant's guilt"].)

As to count 6, defendant also argues that the prosecutor's error provided the "missing factual link" to establish the actus reus of *bringing* the controlled substance into jail, by making it explicit that he rejected an opportunity to avoid doing so. For the reasons discussed above, there was no gap in the evidence as to whether defendant received and rejected an opportunity to disclose the fentanyl before completing the booking process. Peterson's testimony indeed left vague the precise circumstances of defendant's opportunity at the jail, but no reasonable juror would question whether the opportunity existed. (See *People v. Collins* (2010) 49 Cal.4th 175, 210–211 [prosecutor's reference to extrajudicial statement was harmless under any standard where it "added nothing to the essence of [the witness]'s testimony"].) Moreover, given the lack of any instruction that the prosecution had to prove rejection of such an opportunity (a proposition we question as a matter of law), we see no possibility that the jury would fail

to find that defendant brought fentanyl into jail in violation of section 4573 based on the admitted testimony alone.

Next, defendant argues that the prosecutor's closing arguments poisoned the jury as to both counts 6 and 7 by creating a risk that the jury would base its verdicts, in part, on an improper propensity inference from defendant's purported reference to having committed the same crimes in the past. The prosecutor indeed told the jury at two separate points during his closing arguments that defendant said, "I did it in the past," and, "I got away with it last time." While this might create a risk that the jury would consider defendant's purported past conduct as propensity evidence, we are convinced beyond a reasonable doubt that it did not create a risk that the jury would convict him on the drug charges *primarily* based on defendant's purported history of similar conduct.

As explained in *People v. Younger* (2000) 84 Cal.App.4th 1360, 1383, on which defendant relies, a "jury [can] properly weigh … propensity evidence together with … other evidence to reach an ultimate determination." What is impermissible is to allow the jury to make a "direct leap from the defendant's disposition, over the troubling aspects of the rest of the evidence, to a guilty verdict." (*Ibid.*) That is, it violates due process to convict *simply* because a defendant committed a similar offense in the past. (See *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1100 [noting that a jury could "properly consider the prior crimes as only one factor contributing to an ultimate finding of guilt beyond a reasonable doubt"].) The risk of an impermissible leap is greatest "[i]f the prosecution's case is weak, or if the strength of the evidence advanced by the defense closely balances the prosecution's evidence." (*Younger*, at p. 1383.)

Here, given the strength of the evidence that defendant knowingly brought fentanyl into the jail, there is little risk that the jury returned a conviction based solely or inordinately on the prosecutor's improper reference to defendant's purported jailhouse statements. Our harmless error conclusion is reinforced by the fact that the jury here was instructed on the requirement of proof beyond a reasonable doubt for each element of the

17.

offenses, the elements of the offenses, their duty to consider all the evidence, their duty to consider evidence of defendant's prior statements alongside all the other evidence, and the difference between evidence and attorney argument. (Cf. *People v. Younger*, *supra*, 84 Cal.App.4th at p. 1383 ["The presumption that juries follow the instructions requiring them to consider all the evidence is a factor tending to support a conclusion" of harmless error].) To the extent the jury mistook for evidence the prosecutor's improper closing reference to defendant's jailhouse statements of previous misdeeds, there was little to no risk that the jury relied primarily on defendant's apparent previous wrongdoing to convict him on the present charges.

Finally, we reject defendant's argument that the prosecutor's conduct was especially suspect because his discussion of the jailhouse statements effectively amounted to the introduction of an improperly admitted confession. " '[T]he improper admission of a confession is much more likely to affect the outcome of a trial than are other categories of evidence, and thus is much more likely to be prejudicial.' " (*People v. Neal* (2003) 31 Cal.4th 63, 86.) Even ignoring the obvious procedural differences between an improperly admitted confession and the closing arguments here, the prosecutor's discussion of defendant's self-incriminating statements not in evidence was, again, harmless under any standard due to the strength of the properly admitted evidence. The prosecutor's description of how defendant told Peterson he thought he could get away with bringing in drugs did not, in this case, operate " ' "as a kind of evidentiary bombshell which shatters the defense." ' " (*Ibid.*) The circumstantial evidence from Peterson's testimony already firmly demonstrated that defendant had knowingly secreted an illicit substance on his person, which Peterson discovered during a search at the jail. Even accepting defendant's purported statements as a confession of sorts, our state Supreme Court has acknowledged "that the erroneous admission of any given confession 'might be found harmless, for example, … when the defendant was apprehended by the police in the course of committing the crime.' " (*Ibid.*) This is just such a case.

18.

We also gain further assurance from the fact that the jury was repeatedly reminded that the attorneys' arguments were not evidence. Both at the start of trial and immediately before the prosecutor's closing arguments, the court instructed the jury that "[n]othing the attorneys say is evidence" and that their "closing arguments" in particular "are not evidence." The prosecutor, himself, then reinforced that instruction in his rebuttal closing argument, stating:

> "As His Honor told you, what we say in our opening and our closing statements and arguments is not evidence.

> "You heard the evidence during the People's case-in-chief."

When combined with the overwhelming evidence of guilt, these instructions and disclaimers convince us that the prosecutor's discussion of facts not in evidence did not contribute to the jury's findings on counts 6 and 7. (See *People v. Rivera* (2019) 7 Cal.5th 306, 335 [prosecutor's error was harmless under either standard where there was strong evidence of guilt and the jury was instructed that attorneys' statements were not evidence]; *People v. Jasso* (2012) 211 Cal.App.4th 1354, 1372 [prosecutor's error was harmless where there was strong evidence of guilt].)

Although we expect greater care in the preparation of closing arguments, reversal is not warranted because the prosecutor's error here was harmless under either the *Chapman* or *Watson* standard.[4]

---

[4] Having addressed the prosecutorial misconduct claim on its merits, we necessarily reject defendant's ineffective assistance claim insofar as he argues that counsel's failure to object at trial deprived him of having the misconduct claim heard on appeal. Our holding that the prosecutor's error was harmless also defeats defendant's substantive ineffective assistance claim because defendant cannot show that the verdicts on counts 6 and 7 would have been different if trial counsel had requested and received a "curative" admonition. (See *People v. Bolin* (1998) 18 Cal.4th 297, 333 [ineffective assistance claim requires both deficient performance and resultant prejudice, meaning, "the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' "].)

**III.    Resentencing Under Assembly Bill No. 518**

Lastly, defendant requests that, in the event we affirm the drug convictions, we nevertheless vacate his sentence and remand for resentencing based on the new discretion afforded under section 654, as amended by Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518). The relevant amendment to section 654—which became effective January 1, 2022, about one month after defendant's sentencing—would have allowed the trial court to stay the two-year sentence on the section 4573 conviction rather than the 180-day sentence on the simple possession conviction. The People agree that we should remand for resentencing after this ameliorative change in law.

Under section 654, if a defendant's single action or course of conduct violates multiple laws, "the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) At the time of defendant's sentencing, section 654 required trial courts to impose punishment under the offense carrying "the longest potential term of imprisonment." (Former § 654, subd. (a).) Assembly Bill 518 amended section 654 to authorize trial courts instead to punish covered crimes under any of the applicable sentencing provisions. (See § 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1.) As amended, section 654 now gives trial courts discretion to impose and execute a shorter sentence while staying the execution of the longest sentence. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

"Because Assembly Bill 518 was enacted while defendant's [case] was not yet final and it provides the trial court new discretion to impose a lower sentence, defendant is entitled to its ameliorative benefit." (*People v. Mani*, *supra*, 74 Cal.App.5th at p. 379; see *In re Estrada* (1965) 63 Cal.2d 740, 744–745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect].) The parties agree that Assembly Bill 518 applies retroactively to this case, which is not yet final. (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 ["For

purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review."].)

Here, because the drug convictions on counts 6 and 7 arose from a single course of conduct, section 654 governs their associated sentences. As required by former section 654 at the time of sentencing, the trial court imposed and executed the sentence under the conviction with the longest potential prison term—a two-year prison sentence for count 6, bringing a controlled substance into jail—and stayed the 180-day sentence for count 7, simple possession, which authorizes a maximum sentence of one year in a county jail absent certain aggravating prior convictions (see Health & Saf. Code, § 11350, subd. (a)).

Although the trial court at sentencing noted several negative aspects of defendant's conduct and history and imposed the maximum sentence, the court did not "clearly indicate" that defendant was undeserving of any leniency. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Because it is possible that the trial court might have chosen to impose the lighter sentence on count 7 and stay the sentence on count 6 were that an option, we agree with the parties that remand for resentencing is appropriate.

Defendant urges us to direct that the remand be for a full resentencing on all five counts, not solely for resentencing on counts 6 and 7. The People do not address this request, and we agree that even though we are not reversing any of defendant's convictions or invalidating any portion of his sentence, the resentencing should not be limited to the counts directly affected by the amendment to section 654. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 [under the " 'full resentencing rule,' " on remand for resentencing " 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of … changed circumstances' "]; *People v. Jones* (2022) 79 Cal.App.5th 37, 45–46 [remanding for full resentencing because the need to apply amended §§ 654 & 1170 constituted "changed circumstances"]; see also *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1257–1258.) We therefore remand for a

full resentencing with the benefit of the discretion section 654, as amended by Assembly Bill 518, now affords the trial court.

## DISPOSITION

Defendant's sentence is vacated, and the matter is remanded for a full resentencing hearing consistent with this decision.  The judgment of conviction is otherwise affirmed.

HILL, P. J.

WE CONCUR:

POOCHIGIAN, J.

DETJEN, J.